# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELINDA VIGIL, et al., Plaintiffs, v. COLOPLAST CORP., Defendant. | Case No.: 3:19-cv-01851-GPC-BGS<br><br>**ORDER GRANTING LEAVE TO AMEND THE SHORT FORM COMPLAINT.**<br><br>ECF No. 43. |

Plaintiffs Belinda Vigil and her husband, Juan Vigil, seek leave from the Court to amend their short form complaint to include the Aris-Transobturator Sling System (the "Aris Sling") as a product at issue. Defendant Coloplast Corporation opposes the amendment. Plaintiffs' motion thus presents two questions for the Court: (1) whether a two-and-a-half-year-old amendment to the complaint that is unlikely to trigger much more discovery is unfairly prejudicial to the Defendant, and (b) whether Plaintiffs' proposed amendment would futilely raise time-barred claims. The Court answers both questions in the negative, and thus **GRANTS** Plaintiff's request to amend the complaint.

## I. Background

On October 2, 2015, Plaintiffs filed suit in the Southern District of West Virginia against Defendant alleging seventeen causes of actions arising from Mrs. Vigil's use of two allegedly defective products – Novasilk and Axis Tutoplast. (ECF No. 1.) Plaintiffs'

case was filed as part of the pelvic mesh multidistrict litigation *In Re: Coloplast Corp., Pelvic Support System Products Liability Litigation*, MDL No. 2387.

On September 12, 2019, Judge Joseph R. Goodwin, U.S. District Judge for the Southern District of West Virginia, granted Defendant's motion for summary judgment on ten causes of action. (ECF No. 55.) At this time, six causes of action remain: (A) Count IV – Strict Liability (Failure to Warn); (B) Count V – Strict Liability (Defective Product); (C) Count X – Discovery Rule, Rolling and Fraudulent Concealment; (D) Count XII – Negligent Infliction of Emotional Distress; (E) Count XV – Unjust Enrichment; and (F) Count XVII – Punitive Damages.[1] (ECF Nos. 1, 55.)

This matter was transferred to the Southern District of California on September 26, 2019, (ECF No. 66), and was assigned to this Court on September 30, 2019. (ECF No. 69. On October 2, 2019, Defendant Coloplast filed a notice of related cases citing three other cases in this district. (ECF No. 70.) The Court has elected not to consolidate this case with the other three cases.

Prior to transferring the case to this District, Plaintiffs filed a request to amend the short form complaint to include a third product, the Aris Sling, on May 20, 2019. (ECF Nos. 43, 45.) On June 3, 2019, Defendant filed an opposition to that motion. (ECF No. 54.) Plaintiffs did not file a reply. On November 6, 2019, the Court set a hearing for Plaintiffs' motion on January 10, 2020 at 1:30 p.m. (ECF No. 78.) The Court now **GRANTS** Plaintiff's motion and vacates the upcoming hearing.[2]

## II. Standard of Review

---

[1] According to Defendant, "Plaintiffs state in their opposition to summary judgment that the only claims they will pursue at trial are negligent design (Count I), strict-liability failure to warn (Count IV), and punitive damages (Count XVII)." (ECF No. 54 at 5 n.3.) However, Plaintiffs' opposition to Defendant's motion for summary judgment states they will not proceed to trial on Counts I, II, VI, VII, VIII, IX, XI, XIII, and XIV. (ECF No. 50 at 2.) In light of this inconsistency, the Court looks to the order on summary judgment to determine which counts have survived. (ECF No. 55.)

[2] The Parties' arguments as to this amendment are also contained in three other documents filed contemporaneously with the instant motion: Defendant's motion for partial summary judgment, (ECF No. 42); Plaintiff's opposition to that motion, (ECF No. 51); and Defendant's reply. (ECF No. 53.) The Court will also draw on those papers in rendering judgment on Plaintiff's motion.

2

3:19-cv-01851-GPC-BGS

Federal Rule of Civil Procedure ("Rule") 15(a) provides that, after an initial amendment as of right, a complaint may only be amended "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Leave to amend should be "freely grant[ed] . . . when justice so requires," *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981) (quoting Fed. R. Civ. P. 15(a)), and this Rule should be interpreted and applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The "purpose" this standard is "'to facilitate a proper decision on the merits' . . . and not to erect formal and burdensome impediments in the litigation process." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)); *see Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

Courts ordinarily consider five factors when determining whether to grant leave to amend under Rule 15: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment," and (5) whether the pleadings have previously been amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court need not consider all the other factors, *Atkins v. Astrue*, No. C 10–0180-PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011), and the first factor, undue delay, is insufficient by itself to justify denying leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). However, at a minimum, a court should address any issues of prejudice as this is the "touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The party opposing amendment has the burden of showing that the amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir.1988), and the Court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

### III. Analysis

As a threshold matter, the factors of undue delay, bad faith, and prior amendments

are determinative of Plaintiff's request. Plaintiffs' request evinces a near-three-year delay to amend the complaint, and their characterization of this delay as "inadvertent" does not amount to good cause. (ECF Nos. 43, 45.) However, "delay alone provides an insufficient ground for denying leave to amend or supplement." *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1319–20 (9th Cir. 1984) (citation omitted); *see also Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973) (granting leave to amend five years after the complaint was filed). In addition, Defendant neither asserts that Plaintiff's request is made in bad faith nor complains of past, repeated amendments. (ECF No. 54.) Consequently, a decision on Plaintiffs' motion turns on prejudice and futility.

### a. Defendant Would not be Unduly Prejudiced by Plaintiff's Amendment.

Leave to amend need not be granted where "the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice." *W. Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991) (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). The more facts, claims, and parties to be introduced by the amendment, the greater the risk of undue prejudice to Defendant. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of motion to amend upheld where "new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense"); *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (same).

Here, granting Plaintiffs' request would permit "a proper decision on the merits" without imposing "undue prejudice" on Defendant. *Howey*, 481 F.2d at 1190. Plaintiff does not ask to add new defendants or claims. *Loehr v. Ventura Cty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1320 (9th Cir. 1984) (finding Plaintiff's request to add ten new claims and two additional defendants "would have substantially complicated and delayed the case for new discovery, responsive pleadings, and considerations of state law."). Plaintiffs merely ask that a product be included in the complaint of which Defendant

received notice early in the litigation. (ECF No. 43-4, Ex. D, Plaintiff's Fact Sheet at 5.)

At this point, moreover, both parties have sought discovery materials pertaining to the Aris Sling, including during the deposition of the treating physician, Dr. Saad Juma. (*See, e.g.*, ECF No. 43-6, Ex. F, List of Exhibits at Juma Deposition; ECF No. 43-7, Ex. G, Excerpt of Juma Deposition); *see Howey*, 481 F.2d at 1191 (finding no prejudice where Defendant participated in discovery and the amendment presented "similar" issues). Likewise, both parties have produced expert reports which address the relevance and connection of the Aris Sling to Plaintiff's injuries. (ECF No. 43-9, Ex. I, Expert Report of Dr. Sherry Thomas at 12–13; ECF No. 43-10, Ex. J, Expert Report of Dr. Michael Thomas Margolis at 4–5.) And, as the pre-trial conference is not set until May 1, 2020, (ECF No. 88 at 6), there is no risk that Plaintiff's amendment will produce "last-minute changes in trial preparation" that might be "unduly prejudicial." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1520 (9th Cir. 1983).

Thus, as is clear from the parties' pre-trial conduct, Plaintiffs' requested amendment would not cause Defendant to face undue prejudice.[3]

### b. Plaintiff's Amendment is Not Futile

Similarly, the Court cannot find that Plaintiffs' argument is futile as a matter of law. "Under futility analysis, 'dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)). This is the case where an affirmative defense precludes a plaintiff from relief. *See Faulkner v. ADT Sec. Servs., Inc.*, 624 F. App'x 544 (9th Cir. 2015) (citing *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 n.7 (9th Cir. 2003)) (amendment precluded by statute of

---

[3] As appropriate, defense may request a modification of the scheduling order to permit necessary discovery and additional motions following Plaintiffs' amendment of the complaint.

5

limitations); *Arnold v. Anthem Inc.*, No. 18-CV-02981-LHK, 2019 WL 1048254, at *5 (N.D. Cal. Mar. 5, 2019) (amendment precluded by waiver provision).

Under California law, the statute of limitations for a claim sounding in negligence is two years. *See Ventura Cty. Nat. Bank v. Macker*, 49 Cal. App. 4th 1528, 1529 (1996). A "cause of action accrues when the claim is complete with all of its elements." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008). "Although this ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements." *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006), as modified (citations omitted).

A plaintiff has reason to discover a claim once she "suspects a factual basis, as opposed to a legal theory, for its elements" or, "when, simply put, [s]he at least suspects that someone has done something wrong to [her] . . . wrong being used, not in any technical sense, but rather in accordance with its lay understanding." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–98 (1999). In other words, a plaintiff need not have "actual . . . knowledge of the harm" to trigger the statute of limitations, *Henderson v. Pfizer, Inc.*, 285 F. App'x 370, 373 (9th Cir. 2008) (quotations omitted), and instead need only perceive "sufficient facts to put her on inquiry notice." *Id.* (citations omitted); *see also Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). Moreover, a "plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

"The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014) (quoting *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008)). Thus, it is most often "a question for the trier of fact." *E-*

*Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320 (2007) (quoting *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970)). Also, because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted).

Here, Defendant asserts that Plaintiffs' amendment would be futile as both parties agree Plaintiffs' claims are bound by a two-year statute of limitations. (ECF No. 54 at 5; ECF No. 51 at 4–5.) Defendant argues that the record supports only one conclusion: that Plaintiff had reason to suspect the Aris Sling may have been to blame for her symptoms by March 20, 2013 when she "underwent her removal surgery" – more than two years prior to the date when she filed the instant suit. (*Id.* at 5–8; ECF No. 42 at 7–8; ECF No. 53 at 3.) Plaintiffs respond that whether they had inquiry notice is a matter of factual dispute for the jury to decide and point to contravening evidence that Mrs. Vigil's physician told her the mesh was not to blame. (ECF No. 51 at 4–5; ECF No. 45 at 6.) The Court agrees with Plaintiffs for the reasons that follow.

In personal injury suits, the date commencing the statute of limitations period is typically the date that the plaintiff was first injured. *Slovensky*, 142 Cal. App. 4th at 1528 (quotations omitted); *see also Norgart*, 21 Cal. 4th at 397 (a statute of limitations begins to run "when, under the substantive law, the wrongful act is done, or the wrongful result occurs") (quotations omitted). That is because, as of that date, the Plaintiff is presumed to understand she was wronged vis-a-via the injury. Related actions for products liability track the same statute of limitations. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 812 (2005) (citation omitted). However, with an injury resulting from surgery, it is reasonable for a plaintiff's suspicion to arise only with the passage of time. After all, the "fact an operation did not produce the expected result would not necessarily suggest to the ordinary person the operation had been performed negligently." *Unjian v. Berman*, 208 Cal. App. 3d 881, 885 (Ct. App. 1989).

Hence, various courts have found that the statute of limitations is instead triggered

by a follow-up procedure or corrective surgery. *See Henderson*, 285 F. App'x at 372 (finding that a non-surgical follow-up procedure – an ultrasound – provided plaintiff notice that an implanted intrauterine device that she thought had been discharged might be the cause of her pain and infertility); *Sprague v. Stryker Corp.*, No. SA-CV-1300154-CJC, 2013 WL 12131269, at *1 (C.D. Cal. Aug. 21, 2013) (finding a reasonable plaintiff "would have suspected wrongdoing by" the "second corrective surgery"); *Coleman v. Bos. Sci. Corp.*, No. 10-CV-01968-OWW, 2011 WL 3813173, at *3 (E.D. Cal. Aug. 29, 2011) (same, but after the first corrective surgery). These cases rely on the reasoning that the subsequent procedure evinces a patient's recognition that the initial surgery may have gone awry and caused her injury. *See, e.g., Coleman.*, 2011 WL 3813173, at *3 (E.D. Cal. Aug. 29, 2011) ("To the extent Plaintiff understood the reason for her [first corrective] surgery, she was on inquiry notice at that time.") Likewise, a patient's conduct may reveal their awareness that a specific defendant could be liable for their injury. *See, e.g.*, *Henderson*, 85 F. App'x at 372 (noting that plaintiff wrote to defendant acknowledging an Australian lawsuit's allegations that their products caused infertility). This is true especially where the patient has advanced notice that the harm they now experience could result from that surgery. Defendant makes these very arguments here. (ECF No. 53 at 3–8; ECF No. 54 at 5–8.)

Defendant is wrong, however, to assert that a follow-up procedure categorically triggers the statute of limitations to run. (ECF No. 54 at 6–7.) "There are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party." *E-Fab, Inc.*, 153 Cal. App. 4th at 1320 (quotations omitted). Consequently, the Court must study the specific record at hand, especially because under the relevant standard Defendant's success requires that "the evidence . . . support[s] only *one* reasonable conclusion." *Eidson*, 40 F. Supp. 3d at 1218 (emphasis added).

Here, the factual record does not exclusively support Defendant's position. In the surgical cases cited by Defendant, the respective plaintiffs sought out a remedial surgery shortly after the first procedure to correct an evident deficiency in their medical

8

treatment. *Cf. Sprague*, 2013 WL 12131269, at *1 (where plaintiff began corrective surgeries four months after her knee replacement); *Coleman*, 2011 WL 3813173, at *1 (where plaintiff began corrective surgeries seven months after her mesh implantation). In contrast, Mrs. Vigil waited five and a half years to undergo a second surgery because, as Defendant's expert acknowledges, her incontinence did not worsen immediately after the surgery. (*See* ECF No. 43-9, Ex. I, Expert Report of Dr. Sherry Thomas at 6 (noting that Plaintiff's "onset was gradual," starting only "2 years" prior to an October 15, 2012 meeting with Dr. Juma)). It would not be unreasonable, moreover, for Plaintiffs to think that the pain and incontinence which drove her to undergo a second surgery stemmed from her preexisting health problems or the other physical ailments she endured during the five-and-a-half-year span between her surgeries – and thus not from a product failure in the Aris implant. (*Id.* at 4–7 (noting Mrs. Vigil suffered from dyspareunia and chronic back pain between her surgeries and experienced a "long-standing history of progressive vaginal prolapse" prior to 2006)).

This is especially true given the medical advice she received from her treating physician. *See Sprague*, 2013 WL 12131269, at *2 (noting that "in some circumstances it may be reasonable to dismiss wrongdoing based on a doctor's representations"). When Mrs. Vigil attempted to discuss her symptoms with Dr. Juma, he told her, "don't worry about it. You're okay. It's not the mesh." (ECF No. 51 at 4).[4] Dr. Juma thus addressed Mrs. Vigil "in a manner that could lead a reasonable person to believe there was no negligence." *See Lamb v. Scripps Clinic*, No. E-045667, 2006 WL 172070, at *5 (Cal. Ct. App. Jan. 24, 2006); *see also Eidson*, 40 F. Supp. 3d at 1220 (permitting the question of discovery to go to the trier of fact, in part, because of the physician's statement that her "pain was due to a biological phenomenon in terms of the way his body uniquely reacted

---

[4] Plaintiffs offer this quote from the deposition of Belinda Vigil in their opposition to the motion on summary judgment but do not attach an excerpt of that deposition. (ECF No. 51 at 4.) Defendant, in reply, notes that Dr. Juma also warned Ms. Vigil of the risks involved in her surgery several times, but does not attack the accuracy of the quote or assert that Plaintiffs misquoted the record. (ECF No. 53 at 4–5.) Thus, the Court relies on Plaintiffs' quote here.

9

to surgery.") (quotations omitted); *Unjian*, 208 Cal. App. 3d at 886 (denying defendant's motion for summary judgment on statute of limitations grounds because plaintiff "was told by [his doctor that his post-face-lift] infection was possibly caused by old acne cysts"); *Cf. Sprague*, 2013 WL 12131269, at *1 (finding that a doctor's warning that the patient's injuries were "known risks of knee replacement surgery and not the result of a defective knee replacement device or negligence" did not eliminate her duty to investigate if the product was at fault because the warnings were given nine months *before* the second corrective surgery). Thus, even though Dr. Juma warned Mrs. Vigil that her initial surgery may result in the injuries that she then experienced, she "could [nonetheless] have reasonably accepted the doctor's [dismissal] of the injury." *Eidson*, 40 F. Supp. 3d at 1220 (citing *Unjian*, 208 Cal. App. 3d at 884–88).

In addition, the Court does not find that plaintiff's assertion that she first became suspicious of the implant after hearing about its potential risks on a commercial to be so "incredible" that it is the only reasonable interpretation of the record. (ECF No. 54 at 5; ECF No. 43-4, Ex. D, Plaintiff's Fact Sheet at 7.) After all, Plaintiff is no medical expert and at least one of the courts cited by Defendant found discovery-by-advertisement sufficiently plausible to rule against Defendant's very argument there. *See Eidson*, 40 F. Supp. 3d at 1219 ("it is plausible that the Bells did not have reason to know or suspect that wrongdoing caused Scott Bell's injuries until April 2012 when Scott Bell's mother saw a commercial regarding Infuse"); *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966, 973 (9th Cir. 2002) (finding that a public recognition of a harm – here, the dangers of smoking – may suffice to put an injured party on inquiry notice). In addition, the Court's concerns as to this point are assuaged, in part, by Plaintiff's allegation that:

> "Despite diligent investigation by Plaintiffs, including the female Plaintiff named in Plaintiff's Short Form Complaint, into the cause of their injuries, including consultations with Plaintiffs' medical providers, the nature of Plaintiffs' injuries and damages, and their relationship to the Products was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims."

(ECF No. 43-3, Ex. C, Master Long Form Complaint at ¶ 166); *see also Fox*, 35 Cal. 4th at 811 (assuming similar allegations to be true in the absence of more developed facts).

Consequently, the Court holds that the issue of whether the statute of limitations should be tolled cannot be decided at this time. The Court finds that Plaintiff has sufficiently alleged (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence given her physician's advice, the length of time between her surgeries, her other health complications, and the commercial she observed. *Fox*, 35 Cal. 4th at 807–12. These facts create "a triable issue as to when the plaintiff knew or should have known of the injury and its negligent cause." *Eidson*, 40 F. Supp. 3d at 1220 (citing *Unjian*, 208 Cal. App. 3d at 884–88). Consequently, Plaintiff's amendment is not necessarily futile.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's request for leave to amend the complaint. Despite the lateness of this amendment, the Court finds that it is neither prejudicial nor futile, and thus the Rule 15 factors weigh in favor of permitting it now. Plaintiffs must file the amended short form complaint as a new docket entry no later than **January 12, 2019**.

**IT IS SO ORDERED.**

Dated: January 8, 2020

Hon. Gonzalo P. Curiel
United States District Judge